**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DYNAMIC ENERGY SOLUTIONS, LLC,**

              **Plaintiff,**

    **v.**                           **Case No. 3:18-cv-884**

**SCOTT PINNEY, DISTRIBUTED SUN, LLC,**
**and SUN8 PDC LLC,**

              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

Before the Court are motions to dismiss the Complaint and the counterclaim in this matter that concerns a dispute over a lease for property to be used for solar power generation. See dkt. #s 20, 33. The parties have briefed the issues, and the Court has determined to decide the matter without oral argument.

### I.    Background

Plaintiff Dynamic Energy Solutions, LLC ("Dynamic"), helps to "design, finance, build and maintain solar energy projects for commercial, institutional, and utility clients." Complaint ("Complt."), dkt. # 1, at ¶ 2. Dynamic constructs photovoltaic power stations ("solar farms") that convert sunlight into electricity "on a large scale." Id. Dynamic makes money by selling the electricity generated back to the power grid, selling or leasing the solar farm to another party, and by serving as a contractor for solar developments. Id.

1

Operating on this principle, in June 2016 Dynamic executed a Site Lease Option with Defendant Scott Pinney. Id. at ¶ 4. That Option provided Dynamic an exclusive option to lease a 15-acre parcel of land from Pinney in Dryden, New York. Id. That parcel was part of 157-acre property that Pinney owned. Id. Dynamic needed the rights to develop property to obtain licenses, permits, and funding necessary to build the solar farm. Id. Part of the funding was to come from a state grant. Id. Dynamic also planned to engage in due diligence on the property to determine the feasibility of the project. Id.

Plaintiff alleges that Pinney leased the "exact same" property to Dynamic's Competitor, Defendant Sun8 within a few months of signing the Lease Option with Dynamic. Sun8 is a wholly-owned subsidiary of Defendant Distributed Sun, LLC ("Distributed Sun"), one of Dynamic's competitors. Id. at ¶¶ 5, 19. Plaintiff alleges that Distributed Sun develops solar energy. Id. at ¶ 18. Pinney leased the entire 157-acre parcel to Sun8, which "necessarily subsum[ed]" the property Dynamic hoped to develop. Id. ¶ 5. Pinney did not inform Dynamic of the competing lease until Dynamic attempted to exercise its option on the smaller tract of land. Id. By the time Dynamic sought to exercise its option, Dynamic had already spent a considerable sum of money applying for approvals necessary for the project. Id. at ¶ 6. Dynamic had also been awarded a $1.05 million grant from NYSERDA, New York's renewable energy agency. Id. That grant applied only to the property on which Sun8 negotiated a lease. Id. Fearful about economic loss, Dynamic contacted Pinney, Sun 8, and Distributed Sun in an attempted to find a solution. Id. at ¶ 7. The Defendants refused Dynamic's offer. Id. Pinney recorded Sun8's lease for Sun8's benefit and issued Sun8 an "estoppel certificate," which stated that the Sun8 lease had priority on the land. Id. Dynamic claims that Defendants' conduct cost Dynamic millions, "including wasted cost

2

outlays, loss of the state grant, loss of the value of the development, and wasted time." <u>Id.</u> at ¶ 8.

Plaintiff further alleges that Distributed Sun and Sun8 applied for "permits, zoning changes, licenses and/or other permission from the Town of Dryden" as part of the Defendants' proposed solar farm. <u>Id.</u> at ¶ 9. Shortly after Defendants sent in the applications, but before Defendants rejected Sun8 and Pinney's attempts to solve the lease problem, Dynamic's general counsel sent the Town of Dryden a letter requesting that the Town take no action on the Defendants' pending applications. <u>Id.</u> at ¶ 10. Counsel sought time to resolve the leasing dispute. <u>Id.</u>

After Dynamic sent these letters, Defendants Distributed Sun and Sun8 filed a lawsuit in the Supreme Court of Tompkins County, New York. <u>Id.</u> at ¶ 11. The action, <u>Sun8 PDC LLC v. Scott Pinney and Dynamic Energy Solutions, LLC</u>, brought a number of claims, including one for tortious interference with a contract. <u>Id.</u> In this respect, Distributed Sun and Sun8 pionted to Dynamic's letter to the Town of Dryden, as well as "other unspecified 'contact[] with [T]own officials, members of the Dryden Planning Board and/or Town Board, and [T]own residents[.]'" <u>Id.</u>

Plaintiff alleges that the tortious interference claim in this case "could not possibly have had a substantial basis in fact and law" and was not "supported by a substantial argument for extension, modification or reversal of existing law." <u>Id.</u> at ¶ 14. Plaintiff contends that the tortious-interference claim was "frivolous," as evidenced by Sun8's voluntary dismissal of that count after the parties briefed a dismissal motion. <u>Id.</u>

Plaintiff further contends that Sun8 filed the motion "to harass, intimidate, punish, or otherwise inhibit Dynamic's free exercise of its speech, petition, or association rights." <u>Id.</u> at

¶ 15. Distributed Sun's own conduct, Plaintiff claims, supports this interpretation. Id. According to Plaintiff, "Distributed Sun's Chief Executive Officer ("CEO") called Dynamic's CEO," threating "to f@$% [Dynamic] up." Id. at ¶ 15. Plaintiff alleges that "Distributed Sun directed the filing of the Sun8 lawsuit the next day." Id.

Plaintiff filed the instant Complaint on July 27, 2018. The Complaint contains two counts. Count One seeks damages for breach of contract against Pinney. Count Two seeks damages against Sun8 and Direct Sun for filing a Strategic Lawsuit Against Public Participation (a "SLAPP" suit) in violation of New York Civil Rights Law §§ 70-a and 76-a. Direct Sun and Sun8 filed a motion to dismiss the action against those Defendants. See dkt. # 20. The relevant parties briefed those issues.

Pinney filed an Answer and Counterclaim. See dkt. # 21. Pinney's Counterclaim centers on the conduct of Ron Szymanski. Pinney alleges that Dynamic had a contractual relationship with Szymanski beginning on or about November 21, 2014. Id. at ¶ 3. Pinney claims that Szymanski operated as the agent and alter ego of Dynamic at all relevant times. Id. at ¶ 4. According to Pinney, Szymanski's "duty to Dynamic was to locate real property that might be used for solar projects by solar energy developers other than Dynamic." Id. at ¶ 5. Szymanski allegedly approached Pinney in late 2015 or early 2016 to inquire about his interest in leasing land for solar energy development; he did not reveal to Pinney that he was serving as Dynamic's agent. Id. at ¶¶ 6-7. Instead, Pinney alleges, Szymanski promised that he would "work for Pinney to obtain the best price for the Dryden property." Id. at ¶ 8. Pinney further alleges that Szymanski came to him in June 2016 with two documents to sign. Id. at ¶ 9. Based on Szymanski's representations, Pinney believed that the documents would permit Dynamic and Distributed Sun to both survey and inspect the

4

property for its suitability for solar development.  Id. at ¶ 9.  "Based on Szymanski's representations," Pinney alleges, he reasonably believed that neither document bound him to lease his property to either company.  Id. at ¶ 9.

Pinney claims that Dynamic and Szymanski "intended to place a cloud on the title" to Pinney's property "as a means of extorting payments from Pinney or Distributed Sun[.]"  Id. at ¶ 10.  From June 2016 to February 2017, Pinney had no contact with Dynamic, even though he and his wife had both attempted to reach out to Dynamic to gauge whether the company was still interested in the property.  Id. at ¶¶ 11-12.  Pinney contends that Dynamic did not visit, survey, or inspect the property during that period.  Id. ¶ 13.  By contrast, Distributed Sun made frequent contact with Pinney about the property.  Id.  at ¶ 14.  Representatives visited the property.  Id.  Dynamic reappeared only after Pinney signed a lease with Sun8, claiming a right to Pinney's land.  Id. at ¶ 15.  Dynamic rejected Pinney's offer of alternative property in Dryden for solar farm development.  Id. at ¶ 16.

Pinney's one-count counterclaim alleges fraud against Dynamic because of promises Szymanic made about the document that Pinney signed.

Dynamic filed a motion to dismiss this counterclaim.  The relevant parties briefed that issue as well.

## II.    Legal Standard

Defendants Sun8 and Distributed Sun have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff seeks dismissal of Pinney's counterclaim on the same basis.  Both sides argue that the relevant party has not stated a claim upon which relief could be granted.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences

in the plaintiff's favor." <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet

does not apply to legal conclusions.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  <u>Id.</u> at 678.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  <u>Id.</u> (quoting <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   Still, even though

"the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue," a

court at the motion-to-dismiss "stage . . . is not engaged in an effort to determine the true

facts."  <u>Doe v. Columbia Univ.</u>, 831 F.3d 46, 48 (2d Cir. 2016).  In deciding a Rule 12(b)(6)

motion, "[t]he issue is simply whether the facts the plaintiff alleges, if true, are plausibly

sufficient to state a legal claim."  <u>Id.</u>  After all, "[i]f the complaint is found sufficient to state a

legal claim, the opposing party will then have ample opportunity to contest the truth of the

plaintiff's allegations and to offer its own version."  <u>Id.</u>

**III.    Analysis**

    **A.    Distributed Sun and Sun8's Motion**

    Distributed Sun and Sun8 move to dismiss the sole count of the Complaint against

them.  The statute on which Dynamic raises this claim protects those raising public

concerns from retaliatory lawsuits known as Strategic Lawsuit[s] Against Public Participation

("SLAPP suits").  SLAPP suits are "'characterized as having little legal merit but are filed

nonetheless to burden opponents with legal defense costs and the threat of liability and to

discourage those who might wish to speak out in the future.'" <u>Hariri v. Amper</u>, 51 A.D.3d

146, 149 (1st Dept. 2008) (quoting <u>600 W. 115th St. Corp. v. Von Gutfeld</u>, 80 N.Y.2d 130,

137 n.1, 603 N.E.2d 930, 589 NYS2d 825 (1993)). "The anit-SLAPP provisions of Civil

Rights Law §§ 70-a and 76-a were enacted in 1992 to protect citizen activists from lawsuits

commenced by well-financed public permit holders in retaliation for their public advocacy."

Guerrero v. Carva, 10 A.D.3d 105, 116 (1st Dept. 2004); see also, Southampton Day Camp

Realty, LLC v. Gormon, 118 A.D.3d 976, 977 (2d Dept. 2014) ("Civil Rights Law § 76-a was

passed to protect citizens facing litigation arising from their public petitioning and

participation.").

To qualify as a SLAPP suit under New York law, a lawsuit must be one that "(1)

seeks damages, (2) was brought by 'public permitees', and (3) is 'materially related'' to

defendant's efforts to 'comment on' or 'oppose' such permission." Gill Farms Inc. v. Darrow,

256 A.D.2d 995, 997 (3d Dept. 1998) (quoting N.Y. Civil Rights Law § 76-a-(1)(a)). "In order

to state an anti-SLAPP counterclaim,[1] a defendant must 'identify . . . the application or

---

[1]Here, Plaintiff did not file its anti-SLAPP claim as a counterclaim in the underlying state-court case, but as an independent cause of action in federal court. That sort of filing is contrary to the normal procedure in such cases, though it is permitted by the statute. See NY Civil Rights Law § 70-a(1) ("A defendant in an action involving public petition and participation . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action[.]"). Of course, the most efficient procedure under the circumstances would be to counterclaim under the anti-SLAPP statute in the face of the original lawsuit. The judge overseeing the claim that gives rise to the anit-SLAPP suit would be in the best position to determine whether damages should be awarded. Damages are available under certain circumstances:

> (a) costs and attorney's fees may be recovered upon a demonstration that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by substantial argument for the extension, modification or reversal of existing law;
> (b) other compensatory damages may be recovered only upon an additional demonstration that the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition, or association

(continued...)

7

permit being challenged or commented on,' and his communication must have been 'substantially related to such application or permit.'" Bridge Capital Corp. v. Ernst, 61 A.D.3d 496 (1st Dept. 2009).  "The defining aspect of a public application or petition is that it is a required government process that must be satisfied to perform some other task."  Chandok v. Klessig, 648 F.Supp.2d 449, 460 (N.D.N.Y. 2009).[2]  "[A] SLAPP-suit defendant must directly challenge an application or permission in order to establish a cause of action under the Civil Rights law."  Guerrero v. Carva, 10 A.D.3d 105, 117 (1st Dept. 2004).  Even if the alleged SLAPP suit bears a material relation to the SLAPP defendant's public comments, an anti-SLAPP action must fail if the suit complained of "has a substantial basis in fact and law."  Giorgio v. Pilla, 100 A.D.3d 826, 828 (2d Dept. 2012).  Because the anti-SLAPP statute "places new restrictions on the ability of public applicants to seek redress from the courts by requiring them to demonstrate their claims contain a substantial, rather than merely a reasonable basis in fact or law," the statute must "be construed narrowly."

---

[1](...continued)
rights; and
(c) punitive damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights.

NY Civil Rights Law § 70-a(1)(a-c).

[2]New York law defines "public applicant or permittee" as:

any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission.

N.Y. Civil Rights Law § 76-a(1)(a).

<u>Harfenes v. Sea Gate Ass'n</u>, 167 Misc.2d 647, 652-53 (New York Cty. Supreme Ct., 1995).

Defendants insist that the lawsuit in question related to a legitimate land dispute between the two parties; the lawsuit sought to clarify the parties' rights as they related to a piece of land both sides sought to develop. As a suit between two sophisticated business entities, Sun8's action did not represent the sort of attempt to silence a public-interest opponent's opposition to a development project that the statute was designed to protect. In that sense, Defendants argue, Plaintiff has failed to allege that Sun8's lawsuit was materially related to any public petition. Sun8's lawsuit made only passing reference to any communication by Dynamic with public officials, and was not designed to stifle community opposition to the project. That passing reference reflected the fact, Defendants argue, that Dynamic did not engage in substantial public petition in reference to the project, and that speech did not amount to a direct challenge to the application by Defendants. A narrow construction of the anti-SLAPP act, Defendants claim, requires the Court to dismiss the case.

The detailed factual allegations in Plaintiff's Complaint describe Dynamic's dealings with Szymanski. <u>See</u> Complt. at ¶¶ 22-25. Serving as Dynamic's "intermediary," Syzmanksi facilitated the "negotiation" of "an option to lease land" between Dynamic and Pinney. <u>Id.</u> at ¶ 24. Dynamic intended to use this period, during which the Plaintiff had an "exclusive right to lease land," "to conduct due diligence, apply for permits and grants, and to otherwise examine the economic feasibility of its particular solar project." <u>Id.</u> The parties contemplated an agreement that gave Dynamic an 18-month "exclusive right and option to acquire the solar rights" to about 15 acres of the larger property. <u>Id.</u> at ¶¶ 25-26. If Dynamic exercised the option, Dynamic would lease the 15-acre parcel for a 25-year term

with two additional five-year terms available at Dynamics discretion.  Id. at ¶ 26.  Dynamic

could exercise this option by notifying Szymanski.  Id. at ¶ 27.  Plaintiff alleges that Pinney

executed the lease option on June 23, 2016.  Id. at ¶ 28.  Dynamic countersigned on July 7,

2016, and Pinney cashed the $1,000 check for the option on September 20, 2016.  Id.

At the same time, Plaintiff alleges, Pinney engaged in other financial dealings

regarding the same property.  On or about June 23, 2016, Plaintiff alleges, Pinney signed a

"non-binding Letter of Intent" with Sun8 for lease of an 11-acre parcel on Pinney's Dryden

property.  Id. at ¶ 34.  This parcel did not conflict with the parcel for which Plaintiff held a

lease option.  Id.  On October 11, 2016, however, Pinney signed a lease with Sun8 for

approximately 49.1 acres on that land.  Id. at ¶ 35.  Plaintiff alleges that Sun8 "applied to

install an interconnection point to the electrical grid" after signing this lease.  Id. at ¶ 36.

Upon doing so, however, Sun8 "was told that there was another applicant ahead in line on

the same property."  Id. at ¶ 36.  As such, Plaintiff contends "Sun8 was on notice that

Pinney had leased a portion of the Subject Property to another developer."[3]  Despite this

apparent conflict over uses on the property, Sun8 and Pinney signed an amendment to their

lease agreement on January 29, 2017.  Id. at ¶ 37.  This amendment leased the entire

property to Sun8, necessarily subsuming the property for which Plaintiff held an option.  Id.

Conflict between Pinney, Dynamic, and Defendants erupted when Plaintiff attempted

to exercise its option on January 31, 2017.  Id. at ¶ 38.  On February 14, 2017, Szymanski

_____

[3]Plaintiff does not make clear to whom Sun8 applied for an electrical connection or
which other applicant was at the head of the line.  Likewise, Plaintiff does not allege that
Dynamic had filed the application.  Moreover, the Complaint is clear that Dynamic held an
option, but had not signed any lease for any portion of Pinney's property at the time of
Sun8's alleged application.

10

admitted to Dynamic that he had leased the land for which Dynamic had an option.  Id. at ¶ 39.  After communication between Dynamic, Pinney and Sun8 about the conflict between the two agreements, Syzmanski notified Pinney on March 6, 2017 that Dynamic intended to exercise its option.  Id. at ¶ 41.  That same day, Sun8's counsel filed an instrument to record the Sun8 lease.  Id. at ¶ 42.  On a March 24, 2017 call with representatives for both Sun8 and Dynamic, Pinney refused to fulfill his obligations under Dynamic's lease option.  Id. at ¶ 43.  This conduct, Plaintiff alleges, cost Dynamic its lease option, all of Dynamic's investment in preparation for the lease, a $1.5 million grant from New York State, and any future profits from the development.  Id. at ¶¶ 45-51.

Plaintiff contends that this conflict led Sun8 to file a SLAPP suit.  Plaintiff avers that Sun8 used the lease to develop a solar project on Pinney's project that included the area for which Dynamic held an option.  Id. at ¶ 52.  As part of the development process, "Sun8 and Distributed Sun submitted to governmental bodies at least five separate applications for site plan approval and subdivision approval, and for at least one special use permit[.]"  Id. at ¶ 53.  Plaintiff further alleges that, on March 16, 2017, the day that the Dryden Town Board "was scheduled to consider an application by the Sun Defendants at a public meeting, Dynamic emailed" Jason Leifer, a Town Supervisor, "in his capacity as an elected official."  Id. at ¶ 54.  The e-mail "informed the Town Supervisor about the existence of the Dynamic Lease Option."  Id.  The e-mail, Plaintiff alleges, "stated that Dynamic had only recently learned about the Sun8 Lease, and that Dynamic was trying to reach a resolution with Sun8."  Id.  Plaintiff "requested that the Town not take action on Sun8's application until Dynamic and Sun8 had an opportunity to resolve their dispute."  Id. at ¶ 54.  The relevant Dryden Town Boards approved Sun8's applications in a series of decisions from February

through August 2017.  Id. at ¶ 55.

Dynamic's counsel issued document preservation notices by e-mail and overnight mail to Pinney and Sun8 on October 25, 2017.  Id. at ¶ 57.  Counsel sent these "notices in anticipation of litigation against Pinney for breach of contract and other related claims."  Id. at ¶ 58.  Distributed Sun's CEO, Chase Weir, called Dynamic twice the next day.  Id. at ¶ 59.  Weir first spoke to Cheryl Cramer, Dynamic's Senior Business Development Manager.  Id. at ¶ 60.  He then spoke with Dynamic's CEO, Michael Perillo.  Id. at ¶ 60.  Plaintiff alleges that Weir spoke angrily to Cramer.  Id. at ¶ 62.  "Among other hostilities," Plaintiff alleges, Weir "told Cramer that Dynamic 'ha[d] done a bad action.'"  Id. at ¶ 62.  He then "slammed" down the phone.  Id.  Weir had a similarly "threatening and hostile" call with Perillo.  Id. at ¶ 63.

Plaintiff alleges that Weir told Perillo that Distributed Sun had spent $70,000 in June and/or July 2017 drafting a lawsuit against Dynamic for tortious interference, and that Perillo planned to file that suit the next day.  Id. at ¶ 66.  Weir allegedly asserted that he was prepared to spend $500,000 litigating that suit.  Id. at ¶ 67.  Weir ended the conversation by telling Perillo "I'm going to fuck you up.  I'm going to fuck you."  Id. at ¶ 68.[4]

Defendants filed their suit on October 27, 2017.  Id. at ¶ 69.  Plaintiff alleges that the lawsuit contained a cause of action for tortious interference with a contract, which Plaintiff contends that Defendants drafted "during the period of its public applications."  Id. at ¶ 70.  According to Plaintiff, "the core" of this claim "focused on Dynamic's alleged engagement with elected officials and others during the Sun Defendants' application process."  Id.  The

---

[4]Plaintiff does not spell out the curse word used here.  The Court would prefer to use the words allegedly used than to force the reader to complete them.

Complaint alleged that Dynamic's tortious conduct "included contracting town officials, members of the Dryden Planning Board and/or Town Board, and town residents for the purpose of obstructing, opposing, and interfering with the permitting process for Plaintiff's solar project." Id. at ¶ 71. Defendants further alleged that Dynamic had "'actively provoked opposition from town residents against Plaintiff's solar project and worked to disrupt the town permitting process." Id. at ¶ 72. This conduct, the Defendants allegedly claimed, meant that Dynamic had "spoke[n] actionably and tortiously to the Town of Dryden and others[,]" and that Dynamic had "'misuse[d]' . . . government processes'" and caused government and private actors to slow down approval of Defendants' projects and limit their ability to raise money for them. Id. at ¶ 75.

Plaintiff claims that Defendants' tortious interference claim lacked a basis in law and "was so nonsensical that Sun8 eventually withdrew it[.]" Id. at ¶ 77. The cause of action, Plaintiff claims, failed even to allege a proper claim. Id. at ¶ 79. Defendants could not have maintained such a cause of action, Plaintiff asserts, because a tortious interference claim requires a showing that a defendant used improper means, and the only conduct alleged against Dynamic was engaging in public participation, which cannot support such a claim. Id. at ¶ 80. Plaintiff further contends that purpose of the tortious interference lawsuit was to "harass, intimidate, or punish" Dynamic for exercising its right to oppose the project; "[t]his is apparent," Plaintiff contends, "from various statements made by Sun8 and CEO Weir, as well as the incoherent nature of the" tortious interference claim "and the Sun8 Lawsuit." Id. at ¶ 85. The state court granted Dynamic's motion to dismiss the Sun8 lawsuit on June 6,

2018, and dismissed the case on June 27, 2018.  Id. at ¶ 91.[5]

Plaintiff contends that Sun8's state-court suit, and in particular the tortious interference claim, amounted to a SLAPP suit: "Sun8 brought a tort claim against Dynamic in retaliation for Dynamic having exercised its First Amendment right to comment on or oppose a public application."  Plaintiff points out that it filed a motion to dismiss Defendant's state-court complaint.  In response, Sun8 withdrew the tortious interference claim.  The trial court subsequently granted the motion to dismiss the rest of the complaint.  Dynamic contends that the allegations in the instant Complaint make a right to relief plausible and urge the Court to deny Defendants' motion.  Dynamic focuses on Sun8's claim of tortious

_____

[5]Sun8's state-court Complaint is attached to Dynamic's Complaint.  See dkt. # 1-1.  That Complaint contained five causes of action.  Count One alleged fraud against Pinney for misrepresenting the status of the land and the state of his title to it.  Count Two accused Dynamic of tortious interference with Sun8's lease agreement with Pinney.  Sun8 contended that "Dynamic knew that the Lease existed between Pinney and Plaintiff and undertook actions to interfere with that contractual relationship and induce Mr. Pinney to breach his contractual obligations and to otherwise render his performance under the lease impossible."  Id. at ¶ 93.  Dynamic interfered with Sun8's relationship with Pinney, Sun8 contended for "the unjustifiable purpose of damaging Plaintiff's relationship with Mr. Pinney and the Town of Dryden."  Id. at ¶ 94.  Among the other wrongful conduct Sun8 pointed to was "contacting town officials, members of the Dryden Planning Board and/or Town Board, and town residents for the purpose of obstructing, opposing and interfering with the permitting process for Plaintiff's solar project."  Id. at ¶ 95.  Count Three alleged breach of express representations and warranties of authorization and validity, and sought quiet possession and quiet enjoyment against Pinney.  Count Four was an action under New York law for quiet title against Dynamic.  Sun8 claimed that Dynamic had no valid right to the property and sought that "Dynamic, and any other party, be estopped and precluded from asserting a claim against the Property."  Id. at ¶ 123.  Count Five sought declaratory judgment against Dynamic and Pinney that served as "a judicial determination of the rights and interest of the parties with regard to the Property."  Id. at ¶ 129.  Sun8 claimed that Dynamic's rights to the property were "inferior" to Sun8's, and that Sun8 had a right to build on the entire property, including the areas covered by the lease option.  Id. at ¶¶ 130, 132.  Sun8 further sought a declaration that Sun8 "is the sole and rightful lease holder for installation and operation of solar panels and is entitled to quiet and peaceful possession of the Property."  Id. at ¶ 133.

14

interference, noting that part of that claim concerned Dynamic's attempt to argue against issuing permits for construction to the Defendants. Plaintiff alleges that this claim, which Defendants eventually abandoned, had no basis in law and served merely to harass Dynamic for opposing its project.

"[A] SLAPP-suit defendant must directly challenge an application or permission in order to establish a cause of action under the Civil Rights Law." Guerrero v. Carva, 10 A.D.3d 105, 117 (1st Dept. 2004). This requirement exists because "the anti-SLAPP law is in derogation of common law" and therefore "must be narrowly construed." Id. Plaintiff here alleges that on March 16, 2017, the day that the Dryden Town Board "was scheduled to consider an application by the Sun Defendants at a public meeting, Dynamic emailed" Jason Leifer, a Town Supervisor, "in his capacity as an elected official." Id. at ¶ 54. The e-mail "informed the Town Supervisor about the existence of the Dynamic Lease Option." Id. The e-mail, Plaintiff alleges, "stated that Dynamic had only recently learned about the Sun8 Lease, and that Dynamic was trying to reach a resolution with Sun8." Id. Plaintiff "requested that the Town not take action on Sun8's application until Dynamic and Sun8 had an opportunity to resolve their dispute." Id. at ¶ 54. This allegation does not contain a "direct" challenge to the Defendants' application for permission to construct the solar project. The email from Dynamic to Leifer does not protest solar installation on the land, but instead informs the Town that a dispute over the validity of the lease exists, and asks for a delay in permitting until the parties can resolve the dispute. This allegation does not assert that Dynamic made public any opposition to the program, but instead had raised in a private communication a business dispute. Plaintiff here asked Leifer to intervene to protect its own financial interest, and not to raise a voice about the project. Construing the anti-

15

SLAPP statute narrowly, the Court finds that Dynamic did not offer the sort of challenge to the existence of a project that would entitle the Plaintiff to the protection of the statute. This finding is sufficient to grant the Defendants' motion to dismiss.

In addition, Dynamic, a company operating in the same field as the Defendant companies, is hardly the sort of public-interest group that the New York legislature intended to protect with the Anti-SLAPP statute. In 149 Mercer Owner LLC v. 151 Mercer Retail LLC, 2017 N.Y. Misc. LEXIS 4655 (N.Y. Sup. Ct., Dec. 5, 2017), the plaintiff alleged that defendants caused damage to the building plaintiff owned, which adjoined property on which defendants did construction and repair work. 149 Mercer Owner, at *2. Plaintiff had sued the defendants in the case for "(1) strict liability for violation of the New York City Building Code; (2) negligence; and (3) breach of contract, requiring defendants to repair damage to the Project, to indemnify [plaintiff] for any damage caused to" the adjoining building, and "to indemnify it for any costs and expenses incurred because of the project." Id. at *3. One of the defendants, an LLC, countersued, claiming "(1) tortious interference with prosepctive business advantage; (2) declaratory judgment, to define the parties rights and obligations" regarding the properties; "(3) private nuisance; (4) public nuisance; (5) breach of contract; and (6) breach of the implied covenant of good faith and fair dealing." Id. at *4. Plaintiff moved to dismiss the counterclaims, "contending that they [were] meritless and asserted solely to stifle [plaintiff's] exercise of its rights to public petition and participation, in violation of the SLAPP Statute." Id. at *5. While the court noted that the defendant's counterclaims "technically fall within the SLAPP Statute," the court still denied the plaintiff's motion to dismiss on SLAPP grounds. Id. at *9-10. In part, the court concluded, plaintiff was "not the sort of defendant the SLAPP Statute is intended to protect."

16

Id.  Plaintiff was a business enterprise, not a "citizen activist or civic group, trying to exercise petition and participation rights" and "purportedly being harassed by a financially superior opponent by means of baseless complaints and claims."  Id.

The same situation applies here, even if the Plaintiff's communications to Leifer were some form of public protest about the permit, Plaintiff is not a public group trying to protect public land or a coaltion of neighbors concerned about the scope of the solar project, but another business disputing Defendants' control of the project.  Plaintiff is Defendants' competitor in the solar business.  The dispute in question involved who got to build the solar project on the contracted land.  "The purpose of statutes governing SLAPP suits in New York is to safeguard free speech and the free exercise of petition and association rights."  Trent v. Architectural Review Bd., 2005 N.Y. Misc. LEXIS 3423, *5 (Sup. Ct. Westchester Cty., July 7, 2005).  Construing the statute narrowly, the Court must conclude that the state-court dispute does not fall within the intended purview of the SLAPP Statute.

The Court notes as well that, unlike most parties that invoke the SLAPP Statute, Plaintiff did not do so as a counterclaim in State court.  Instead, Plaintiff brought this action in federal court, which cost Plaintiff a filing fee and additional attorneys fees, and which forced the Defendants to enter an appearance and defend themselves in another venue. While the SLAPP Statute does not prohibit such litigation, causing a new suit to appear in a new forum is activity less in line with a public-interest entity trying to oppose a project the group deems harmful to the community and more in line with savvy business litigation seeking to protect business interest and cause complications and increase cost to a competitor.  The SLAPP statute, construed narrowly, was not designed to serve that purpose, and the case could be dismissed on that basis as well.

17

Even if the Court were to find that Plaintiff here had properly alleged that Sun8's suit in state court came in response to protests about permitting and was materially related to those protests, Sun8 would still have a defense by showing that its claims "had a substantial basis in fact and law." Giorgio v. Pilla, 100 A.D.3d 826, 828 (2d Dept. 2012). Dynamic points out that the New York court dismissed Sun8's claim and contends that this dismissal is evidence that the claims lacked a substantial basis. The Court notes that New York law "provides that a motion for summary judgment in 'an action involving public petition and participation . . . shall be granted unless the party responding to the motion demonstrates that the action . . . has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law.'" Artisan Lofts Dev. Owner LLC v. Silvers, 2010 NY Misc. LEXIS 1821 at *4 (Sup. Ct. NY Cty., April 5, 2010) (quoting NY CPLR § 3212(h)). The parties dispute whether one of the claims in the Defendant's lawsuit had such a basis, and point to material outside the Complaint in making this argument. Such arguments would be better made after discovery, and the Court declines to rule on them here.[6]

## B.    Counterclaim

Defendant Scott Pinney filed an answer and counterclaim in response to Plaintiff's action. See dkt. # 21. Pinney's counterclaim alleges, "[o]n information and belief," that "Dynamic entered in to a contractual agency relationship . . . on or about November 12, 2014 with one Ron Szymanski." Counterclaim, dkt. # 21, at ¶ 3. Pinney contends that at

---

[6]The Court notes that fling the SLAPP Statute claims as a counterclaim would have allowed the state court to address the substantial basis argument while also evaluating the claims in question. That would have been a preferable procedure.

18

the relevant times, "Szymanski operated as the agent and alter ego of Dynamic." Id. at ¶ 4. Szymanski's role "was to locate real property that might be sued for solar projects by solar energy developers other than Dynamic." Id. at ¶ 5.

Szymanski approached Pinney sometime in late 2015 or early 2016, asking about "Pinney's interest in leasing or selling his Dryden Property for solar energy development." Id. at ¶ 6. Szymanski never informed Pinney of his relationship to Dynamic. Id. at ¶ 7. Instead, Szymanski promised Pinney that he would act to get Pinney "the best price for the Dryden Property." Id. at ¶ 8.

Szymanski gave Pinney two documents for signature in June 2016. Id. at ¶ 9. Based on Szymanski's representations, Pinney believed that the documents would permit Dynamic and Distributed Sun to survey the property and inspect it for suitability. Id. Pinnesy also believed–based on Szymanski's representations–that the documents did not bind Pinney to lease or sell the property to either Dynamic or Distributed Sun. Pinney alleges that Dynamic intended "to place a cloud on the title of the Dryden Property as a means of extoring payments from Pinney or Distributed Sun to which Dynamic and Szymanski would otherwise not be entitled." Id. at ¶ 10.

Pinney had no contact with Dynamic between June 2016 and February 2017. Id. at ¶ 11. Pinney and his wife tried to contact Dynamic during this period. Id. at ¶ 12. They wanted to know if Dynamic still had interest in the property. Id. Dynamic did not respond. Id. Dynamic also failed "to visit, survey or inspect" the property during these months. Id. at ¶ 13. Distributed Sun, on the other hand, "actively communicated with Pinney and visited the Dryden Property." Id. at ¶ 14. Dynamic only reappeared in February 2017, after Pinney signed a lease with Sun8. Id. at ¶ 15. Dynamic claimed rights to the Dryden

Property, and refused Pinney's offer of alternative property in Dryden to build the solar farm.

Id. at ¶¶ 15-16.

Pinney's Counterclaim consists of one count, for fraud. He alleges that:

> 18.   Dynamic through its agent Szymanski misrepresented to Pinney that the document he singed in June 2016 was non-binding.
> 19.   This fact was material as Pinney would not have signed the agreement otherwise.
> 20.   Dynamic through its agent Szymanski misrepresented this fact with knowledge and belief that the representation was false and did so for the purpose of exploiting Pinney and Distributed Sun.
> 21.   Dynamic through its agent Szymanski made this representation to Pinney to induce Pinney to enter a contract for Dynamic and Szymanski's benefit and Pinney's deteriment.
> 22.   Pinney justifiably relied on the representations made by Dynamic through its agent Szymanski and had no knowledge of the representation's falsity.
> 23.   Dynamic's actions, and those of its agent Szymanski, were reckless, malicious, deliberate and immoral.

Id. at ¶¶ 18-23.

Plaintiff seeks dismissal of this Counterclaim for fraud. "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015). In addition to meeting the Rule 12(b)(6) plausibility pleading standard, a party alleging fraud is also required to "satisfy the heightened pleading standard" of Federal Rule of Civil Procedure 9(b), which mandates that "'[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" Id. at 171 (quoting FED. R. CIV. P. 9(b)). The Rule therefore "places two further burdens on fraud plaintiffs[.]" Id. First, the complaint "must '(1) detail the statements (or omissions) that the

plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" Id. (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).  Second, even though a plaintiff may offer "general" allegations of mental state, the plaintiff "must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 272, 290-91 (2d Cir. 2006)).

Plaintiff contends that Pinney has failed to state a claim because he has not alleged justifiable reliance, an inference of fraudulent intent, or damages.  Pointing to the document that Pinney signed, Plaintiff contends that the language in the document forecloses Plaintiff from alleging justifiable reliance on any alleged promise by Szymanski that the document was not binding. Plaintiff also insists that the facts alleged do not produce an inference of fraudulent intent, and that Pinney has not alleged any damages he suffered as a result of the alleged fraud.  Indeed, Pinney leased his property to his fellow Defendant in this case, including the property that was the subject of his agreement with the Plaintiff.

Plaintiff first argues that Pinney has not alleged justifiable reliance because the representations on which he supposedly relied are contracted by the terms of the contract he signed with Dynamic.  "For a claim based on a false representation to be successful under New York law, the plaintiff must have relied on the representation and such reliance must have been justifiable." Royal American Managers, Inc. v. Royal Holding Corp., 885 F.2d 1011, 1017 (2d Cir. 1989).  That reliance must be "reasonable or justifiable under the circumstances of the case" and "'if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by

21

the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." Cudemo v. Al & Lou Constr. Co., 54 A.D.2d 995 (3d Dept. 1976)(quoting Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 322 (1959)).

Dynamic argues that Pinney alleges justifiable reliance on a promise–that the parties' agreement was non-binding–which is contradicted by the terms of the writing. As summarized above, Pinney's counterclaim alleges justifiable reliance based on the Szymanski's promise that the June 2016 agreement was non-binding. In relevant part, that agreement provides "the preliminary terms upon which Dynamic and" Pinney would "move forward with" a solar project on Pinney's property and "enter into a site lease or such other definitive agreements by which Dynamic will acquire the necessary rights from" Pinney "to develop, build, operate and maintain the" solar development on Pinney's property. Site Lease Option Agreement, dkt. # 33-4. That agreement further provides that:

> Owner grants to Dynamic the exclusive right and option to acquire the Solar Rights for a period of eighteen (18) months from the Effective Date of this Option, provided that the Option may be extended for an additional six (6) month period, so long as Dynamic provides evidence that it is reasonably proceeding with development of the Project and provides Owner with a written description of the required remaining development process and timeline. Dynamic agrees to spend its own time, money and other resources at its sole risk in developing the Project plus $1000 initial payment as consideration for the Option.

Id. The Agreement also included Dynamic's right to exercise the option and enter into a 25-year lease on the site, and provided the financial terms for that agreement. Id. The parties also agreed that "[t]his Opinion is a good faith representation of the agreement between the Parties and represents the beginning of the a period of exclusive rights for Dynamic." Id.

22

Numerous courts in New York have found that a party may not allege justifiable reliance when "there is a 'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation[.]" Stone v. Schulz, 231 A.D.2d 707, 707-708 (2d Dept. 1996) (quoting Bango v. Naughton, 184 A.D.2d 961, 963 (3d Dept. 1992); see also, Manchester Equipment Co., Inc. v. Panasonic Indus. Co., 141 A.D.2d 616, 618 (2d Dept. 1988); Marine Midland Bank, N.A. v. Cafferty, 174 A.D.2d 932, 933 (3d Dept. 1991); New York State Mortg. Loan Enforcement & Admin. Corp. v. Coney Island Site Five Houses, Inc., 109 A.D.2d 311, 318 (2d Dept. 1985); Old Clinton Corp. v. 502 Old Country Road, LLC, 5 A.D.3d 363, 365 (2d Dept. 2004); Societe National D'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Bros. Intern. Ltd., 249 A.D.2d 232, 233 (1st Dept. 1998)). When "an express provision in the written contract contradicts the claimed oral representations in a meaningful fashion . . . the conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter." Bango, 184 A.D.2d at 944.[7]

The Option Agreement outlined above contradicts Pinney's claims about the oral representations made by Szymanski in a meaningful way. The parties executed a contract under New York law, where "[g]enerally courts look to the basic elements of the offer and

---

[7]The court may consider the contract between the parties in evaluating the instant motion because "[i]n certain circumstances the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference , a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quoting Corect Industries, Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991)(emphasis in original) (internal citations omitted)). The agreement between the parties is incorporated in the counterclaims.

the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." Express Indus. & Terminal Corp. v. New York State DOT, 93 N.Y.2d 584, 589 (N.Y. 1999). Dynamic could sue Pinney for violating the terms of this agreement (and has done so here). Proving a breach of contract would require a showing of "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc., 16 N.Y.S. 3d 298, 2015 N.Y. App. Div. LEXIS 6711 at *2 (2d Dept. Sept. 16, 2015). Thus, Pinney alleges justifiable reliance on terms which under New York law he cannot assert such reliance: on the basis of representations belied by the terms of the parties' agreement. He signed a binding contract, which he claims Szymanski told him was not binding. As stated, his claim cannot provide relief.

Pinney also argues that Szymanski engaged in a fraudulent misrepresentation by failing to inform him that he worked for Dynamic. Instead, he alleges, Szymanski told him only that he was working for Pinney to secure the best deal he could for his land. Presumably, Szymanski's failure to reveal to Pinney that he was working for Dynamic made Pinney more likely to sign the Lease Option Agreement, thinking that it benefitted him. A plaintiff could theoretically allege fraudulent inducement by pointing to material misrepresentations by a party that induced him to sign a contract. See, e.g., White v. Davidson, 150 A.D.3d 610, 611 (1st Dept. 2017) (finding an allegation of fraudulent inducement by a record company that secured a recording contract with false promises about the ability of the record company to promote plaintiff's work).

Even assuming that Pinney has alleged a fraudulent misrepresentation, however, the

Court finds that he has failed to state a counterclaim for fraud. As explained above, a claim for fraud in New York requires allegations of damages as a result of the alleged fraud. See Loreley Fin., 797 F.3d at 170. While he claims to have suffered damages, Pinney does not offer any explanation of what those damages were and how they came from Dynamic's supposed fraud. In fraud cases, "'[t]he true measure of damage is indemnity for actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (N.Y. 1996) (quoting Reno v. Bull, 226 N.Y. 246, 253 (NY 1919)). The standard provides that "the loss is computed by ascertaining the 'difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain.'" Id. (quoting Sager v. Friedman, 270 N.Y. 472, 481 (N.Y. 1936)). "Damages are to be calculated to compensate plaintiff for what they lost because of the fraud, not to compensate them for what they might have gained." Id. A plaintiff can obtain "no recovery of profits which would have been realized in the absence of fraud." Id.

Pinney does not make any effort to explain his pecuniary losses because of Dynamic's alleged fraud. The facts as alleged here do not indicate any losses. Pinney made an agreement with Dynamic to provide a lease option for $1000. Dynamic paid the money to Pinney. He does not allege that Dynamic's alleged fraud caused him to accept that $1000 when the value of the consideration he provided in return was far higher. Indeed, the facts agreed to by the parties here would make such an allegation impossible to prove. Indeed, Pinney allegedly signed a lease agreement with Sun8 during the exclusive period he provided as consideration for the $1000 he received from Dynamic. He can hardly claim that he lost because he entered into a lease option agreement he supposedly

violated. The only damages that the Court can conceive of for Pinney under these circumstances is a purely speculative loss, and one he is not permitted to recover under the standard recited above: funds from a lease agreement where the lessee was certain that no third party would contest the lease. In other words, funds that he would have realized in the absence of the alleged fraud.

The Court will therefore grant the motion and dismiss the counterclaim for failure to state a claim on which relief could be granted. As the facts alleged and accepted as true make it impossible for Plaintiff to recover, the Court will grant Dynamic's motion with prejudice. The Court will also deny Pinney's request for leave to re-plead. The facts, accepted as true, foreclose Pinney's ability to amend his claim in a way that would allow him to allege facts which would plausibly entitle him to relief. As such, amendment would be futile, and the request is denied. See Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W[here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

Nothing in the Court's decision here should be construed to foreclose Pinney from offering any defense of any type which he feels appropriate to the breach-of-contract claim that Dynamic has raised against him. The Court merely concludes that Pinney cannot state a counterclaim against Dynamic for fraud.

## IV.    CONCLUSION

For the reasons stated above, the motion to dismiss by Defendants Distributed Sun LLC, and Sun8 PDC LLC, is hereby **GRANTED** with prejudice. Those Defendants are

**DISMISSED** from the case.  Plaintiff Dynamic Energy Solutions, LLC's motion to dismiss

Defendant Scott Pinney's counterclaim, dkt. # 33, is hereby **GRANTED** with prejudice.  The

case shall proceed on Dynamic's breach-of-contract claim against Pinney.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: May 8, 2019